UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS DONOVAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JESUS AROCHO, ANDREW HULSE, and )<br>JOSHUA HARRIS, )<br>Defendants. )<br>) | C.A. No. 15-30031<br><br>**FILED WITH WRITTEN<br>CONSENT OF DEFENDANTS** |

**AMENDED COMPLAINT**

**INTRODUCTION**

  1.  This is a civil rights action against Amherst police officers who falsely arrested and used excessive force against Thomas Donovan for exercising his First Amendment right to film police activity with his smartphone. Mr. Donovan recorded Amherst police using what appeared to be too much force while making an arrest. Although Mr. Donovan filmed the officers from behind a fence, at a safe distance, and did not interfere with them, Defendant Joshua Harris—who was wearing full riot gear and carrying a pepper-ball gun and pepper-spray canister—approached Mr. Donovan to prevent him from filming. When Mr. Donovan did not stop filming, Defendant Harris pepper sprayed him at close range. Mr. Donovan continued to film until, a few seconds later, Defendant Jesus Arocho knocked the phone out of his hand and threw him to the ground. Defendant Arocho, assisted by Defendant Andrew Hulse, placed Mr. Donovan under arrest. Meanwhile, Mr. Donovan's phone, which had landed on the ground with the camera facing up, continued to film. It captured the actions of Defendant Harris, who walked over to the phone, stood over it, then stomped on it with his boot, several times, in an unsuccessful

effort to destroy it. Defendant Arocho later brought baseless criminal charges against Mr. Donovan to cover up his own and his fellow officers' wrongdoing. The charges were eventually dismissed.

**JURISDICTION**

2. This action is brought pursuant to 42 U.S.C. §1983 and § 1988 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Title 28 U.S.C. § 1331 and § 1343 provide federal question jurisdiction over all federal claims, and 28 U.S.C. § 1367 provides supplemental jurisdiction over state law claims.

**PARTIES**

3. Plaintiff Thomas Donovan was at all times relevant to this complaint a resident of Massachusetts living in Amherst to attend college at the University of Massachusetts.

4. Defendant Jesus Arocho was at all times relevant to this complaint a duly appointed police officer of the Town of Amherst Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the Town of Amherst. He is sued in his individual capacity.

5. Defendant Andrew Hulse was at all times relevant to this complaint a duly appointed police officer of the Town of Amherst Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the Town of Amherst. He is sued in his individual capacity.

6. Defendant Joshua Harris was at all times relevant to this complaint a duly appointed police officer of the Town of Amherst Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the Town of Amherst. He is sued in his individual capacity.

**FACTS**

7. On March 8, 2014, Mr. Donovan was a fourth-year undergraduate student at the University of Massachusetts Amherst. His major was legal studies. His plan was to become a Massachusetts State Trooper. He hoped to join the military after college to help him obtain this goal.

8. On that day, Mr. Donovan met some friends at his apartment in Amherst with the intention of going to the "Blarney Blowout." At the event, students gather informally to revel and to celebrate the coming of St. Patrick's Day and the spring. Mr. Donovan's apartment was near one of the gathering places.

9. Sometime between 11 a.m. and noon, Mr. Donovan and two friends went outside to observe the crowd of people outside the apartment complex adjacent to Mr. Donovan's. Within minutes, police officers in full riot gear, many of whom had pepper-ball guns, began slowly herding the crowd toward Mr. Donovan's apartment complex.

10. When they reached Mr. Donovan's apartment complex, Mr. Donovan saw several police officers holding someone on the ground and attempting to place handcuffs on him. Mr. Donovan believed the officers were using excessive force. Mr. Donovan pointed his smartphone toward the officers and began to film the incident.

11. Mr. Donovan stood behind a fence approximately 15 to 20 feet away from the officers. He did not interfere with their actions in any way. As he filmed the arrest, he did not say anything to the officers or to anyone else. He did not make any gestures. He stood quietly and calmly.

12. After a short time, Defendant Harris noticed Mr. Donovan and began to walk towards him. Defendant Harris demanded that Mr. Donovan stop filming. Defendant

Harris was wearing full riot gear, including a helmet and visor, and was carrying a pepper-ball gun and a pepper-spray canister.

13. Mr. Donovan replied that he had the right to film.

14. Defendant Harris continued to demand that Mr. Donovan stop filming, and continued to approach Mr. Donovan in a threatening manner. Mr. Donovan remained on the other side of a fence from Defendant Harris. Mr. Donovan never approached him or any other officer.

15. As he walked past Mr. Donovan, Defendant Harris sprayed oleoresin capsicum—pepper spray—at Mr. Donovan from close range.

16. Mr. Donovan asked for Defendant Harris's badge number. Defendant Harris did not respond. He continued to approach Mr. Donovan and to insist that he stop filming.

17. Moments after Defendant Harris came around the fence to where Mr. Donovan was, Defendant Arocho stepped toward Mr. Donovan. Defendant Arocho swung his arm at Mr. Donovan and knocked the phone out of Mr. Donovan's hand.

18. Defendant Arocho immediately grabbed Mr. Donovan's arm and forcefully took him face down to the pavement.

19. Defendant Arocho placed Mr. Donovan in handcuffs. On information and belief, Defendant Hulse assisted Defendant Arocho.

20. Mr. Donovan's phone landed on the ground, where it lay flat with the camera facing upward and continuing to film.

21. After a few seconds, Defendant Harris walked over to the phone. He stood above the phone, looked around, then stomped on the phone. He stomped on it several times. The video can be viewed at **https://www.youtube.com/watch?v=EZLN4oaSf7s**.

22.     Defendant Harris deliberately stomped on the phone. He was trying to destroy the phone and the film footage that it captured. He did so in an unsuccessful attempt to destroy evidence of his own and his fellow police officers' misconduct. He did so to retaliate against Mr. Donovan for filming police officers, and for asserting his constitutional right to film police officers.

23.     Mr. Donovan's phone was inside a shock-resistant protective case. The case was damaged, but the phone was unharmed and the video stored on it was preserved.

24.     Officer Hulse placed Mr. Donovan in a police van, which took him to the police station for processing. Although Mr. Donovan had OC spray on his face and in his right eye, causing him great pain, officers never provided him with medical attention or with assistance removing the residue. During the approximately 20 to 25 minutes Mr. Donovan was in the van, officers denied his requests for water to clean his eye. At the police station, Mr. Donovan eventually cleaned himself as best he could using water from the sink in the cell. He was held for approximately 5 to 6 hours total.

25.     Defendant Arocho wrote a report falsely stating that Mr. Donovan approached the police officers who were making an arrest, that he refused repeated orders to leave the area, and that he was pepper sprayed "as he began to close the distance between himself and the officers." The video shows that these statements are not true.

26.     Defendant Arocho filed criminal charges against Mr. Donovan for disorderly conduct and for riot, failure to disperse. There was no probable cause to arrest or prosecute Mr. Donovan for either of these charges, or for any other charge. The charges were eventually dismissed.

27.     Because of his arrest, UMass sent Mr. Donovan notice that he would be suspended from school until January 2015, effective at the end of the spring semester.

28. Mr. Donovan contested the suspension, which the university rescinded after its investigation revealed that Mr. Donovan had not committed any wrongdoing.

29. Defendants knew that it was wrong to stop a civilian from filming police officers in public when the civilian did not interfere with police activity.

30. Defendants knew that it was wrong to use force against a civilian for filming police officers in public when the civilian did not interfere with police activity.

31. Defendants knew that it was wrong to arrest a civilian for filming police officers in public when the civilian did not interfere with police activity.

32. Defendants knew that it was wrong to try to destroy a civilian's phone merely because it contained video of police officers performing their duties in public.

33. As a result of Defendants' conduct, Mr. Donovan suffered physical, economic, and emotional injuries. Mr. Donovan felt pain in his right eye as a result of being pepper sprayed in the face at close range, then being denied proper treatment.

34. Mr. Donovan was forced to hire a lawyer to defend him against the baseless criminal charges.

35. Mr. Donovan felt distress that he had been pepper-sprayed and arrested for recording the actions of police officers. He knew he had done nothing wrong, but feared that he would be convicted of the false charges brought against him. He feared that the school disciplinary charges would be upheld. He felt embarrassed and ashamed that his name appeared in news reports of students arrested. He was tormented and angry that Defendants had jeopardized his plans for the future merely because he exercised his First Amendment right to film police officers. He worried that he would not be able to pursue his dream of becoming a police officer.

**CLAIMS**

**Count I:**     **42 U.S.C. § 1983 Claim Against All Defendants**

36. The above paragraphs are incorporated by reference.

37. Defendants Arocho and Harris, acting in concert, used unreasonable and excessive force against Plaintiff.

38. Defendants Arocho, Hulse, and Harris, acting in concert, falsely arrested Plaintiff.

39. Defendants Arocho and Harris, acting in concert, assaulted Plaintiff for exercising his right to record police activity in public places and to question police officers. Defendants Arocho, Hulse, and Harris, acting in concert, arrested Plaintiff for exercising his right to record police activity in public places and to question police officers. Defendant Harris stomped on Plaintiff's phone to retaliate against him for exercising his right to record police activity in public places. Defendant Harris stomped on the phone to assist Defendants' illegal actions by destroying evidence of their wrongdoing and to prevent dissemination of the video.

40. Defendants' actions deprived Mr. Donovan of his well-established rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

41. Defendants' actions were taken in reckless disregard for Plaintiff's constitutional rights.

42. As a direct and proximate result of Defendants' actions, Mr. Donovan suffered the damages described above.

**Count II:**     **Massachusetts Civil Rights Act M.G.L. c. 12, § 11I
                  Against All Defendants**

43. The above paragraphs are incorporated by reference.

44. Defendants Arocho, Hulse, and Harris, acting in concert, threatened, intimidated, and physically coerced Plaintiff to stop him from recording police officers and to serve as a lesson to him that videotaping Amherst police officers could result in arrest, physical harm and/or damage to his property. Defendants Arocho, Hulse, and Harris, acting in concert, assaulted and arrested Plaintiff for these same reasons.

45. Acting jointly and in concert, Defendants Arocho, Hulse, and Harris violated Mr. Donovan's civil rights under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I, by threats, intimidation, and coercion.

46. As a direct and proximate result of Defendants' actions, Mr. Donovan suffered the damages described above.

**Count III:    Massachusetts Tort of Malicious Prosecution
                Against Defendant Arocho**

47. The above paragraphs are incorporated by reference.

48. Defendant Arocho caused criminal charges to be brought and continued against Mr. Donovan without probable cause and with malice. The criminal charges were all disposed of favorably to Mr. Donovan.

49. As a direct and proximate result of Defendant's actions, Mr. Donovan suffered the damages described above.

**WHEREFORE**, Plaintiff requests that this Court:

1. Award compensatory damages;

2. Award punitive damages against all Defendants;

3. Award the cost of this action, including reasonable attorney's fees; and

4. Award such other further relief as this Court may deem necessary and appropriate.

**JURY DEMAND**

A jury trial is hereby demanded.

8

                                          RESPECTFULLY SUBMITTED,
                                          For the Plaintiffs,
                                          By their attorneys,

                                          /s/ David Milton
                                          Howard Friedman, BBO #180080
                                          David Milton, BBO #668908
                                          Law Offices of Howard Friedman, P.C.
                                          90 Canal Street, Fifth floor
                                          Boston, MA 02114-2022
                                          617-742-4100
                                          hfriedman@civil-rights-law.com
                                          dmilton@civil-rights-law.com

Dated: June 29, 2015

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above document was served upon the attorney of record for each party via ECF.

Date: June 29, 2015       /s/ David Milton
                                    David Milton